## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| **JOHN ADAM KOZAK,** | **CASE NO. 24-04051-5-PWM** |
| **DEBTOR.** | **CHAPTER 7** |
| **U.S. SMALL BUSINESS ADMINISTRATION,** | **ADVERSARY PROCEEDING NO. 26-_____-5-PWM** |
| **PLAINTIFF,** | |
| **v.** | |
| **JOHN ADAM KOZAK,** | |
| **DEFENDANT.** | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

The United States of America (the "United States"), on behalf of its agency the United States Small Business Administration (the "SBA"), for its complaint against John Adam Kozak ("Mr. Kozak" or "Defendant") hereby alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334(b).

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3.     The Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

5.     Plaintiff is the United States acting on behalf of the SBA.

6.     Defendant is an individual residing within the Eastern District of North Carolina.

7.     On November 20, 2024, Defendant filed a petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the chapter 7 case captioned: *In re John Adam Kozak*, Case No. 24-04051-5-PWM (Bankr. E.D.N.C.).

## STATUTORY BACKGROUND

### I.     The Economic Injury Disaster Loan Program

8.     Section 7(b) of the Small Business Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDLs") "as the Administration may determine to be necessary or appropriate to any small business concern [. . .] if the Administration determines that the [small business] concern [. . .] has suffered a substantial economic injury" as a result of an officially declared disaster.   15 U.S.C. § 636(b)(2).

9.     The Coronavirus Aid, Relief, and Economic Security ("CARES Act"), Public Law No. 116-136, was a federal law enacted in or around March 2020 and

2

designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. In response to the COVID-19 pandemic, the SBA was given additional authority and funds under the CARES Act to make EIDLs to help small businesses and other entities overcome the effects of the pandemic by providing borrowers with working capital to meet ordinary and necessary operating expenses.

10. The initial phase of the EIDL program authorized the SBA to make loan amounts equal to six months of a borrower's working capital, not to exceed $150,000.00. The loan amount was generally calculated using a formula that subtracted a borrower's annual costs of goods sold from the borrower's annual gross revenues, dividing that annual amount by twelve and then multiplying by six to arrive at the six-month working capital amount. The maximum loan amount was the lesser of $150,000.00 or the six-month working capital amount.

11. Borrowers were required to use EIDL proceeds solely as working capital.

12. In EIDL agreements, borrowers were required to certify as follows:

Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-

procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## II.   The Paycheck Protection Program

13.   Also under the CARES Act, the SBA was given authority to administer the Paycheck Protection Program ("PPP"), under which third-party lenders made low-interest loans to small businesses for the purposes of covering payroll costs.   Small businesses could later apply for loan forgiveness provided they had used the loan proceeds for covered purposes.   In certain circumstances, the SBA paid lenders the amount of the forgiven loan balances, including interest.

14.   To obtain a PPP loan, businesses were required to submit a PPP loan application, signed by an authorized representative of the business, acknowledging the program rules.   The business was required to state (a) its average monthly payroll expenses and (b) the number of employees and to provide documentation showing their payroll expenses.   These figures were used to calculate the amount of money the business was eligible to receive under the PPP.   Typically, the loan was 2.5 times the average monthly payroll.   A PPP loan application was required to be processed by a participating financial institution. If a PPP loan application was approved, the lender funded the PPP loan using its own money, which was 100 percent guaranteed by the SBA.   PPP loans were required to be used by businesses on certain permissible expenses to include payroll costs, interest on mortgages, rent, and utilities.   The PPP allowed interest and principal on the PPP loan to be entirely

4

forgiven if the business spent the loan proceeds on these items within the designated time period after receiving the proceeds, and used a certain amount (at least 60%) of the PPP loan proceeds on payroll expenses.

15.     A PPP loan application was processed by a participating lender.   If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies.   While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA.   Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

### III.     The False Claims Act.

16.     The False Claims Act (the "FCA"), 31 U.S.C. §§ 3729–33, provides, in pertinent part, that any person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation.   31 U.S.C. § 3729(a)(1).

17.     FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.   *See* 28 U.S.C. § 2461. For violations occurring after November 2, 2015, the civil penalty

5

amounts currently range from a minimum of $14,308.00 to a maximum of $28,619.00. *See* 28 C.F.R. § 85.5.

18.     For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

> (i)      has actual knowledge of the information;
>
> (ii)     acts in deliberate ignorance of the truth or falsity of the information; or
>
> (iii)    acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

19.     Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id.* § 3729(b)(2)(A).

20.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

## GENERAL FACTUAL ALLEGATIONS

### I.      108 Deal, LLC

#### A.      Structure and Ownership of 108 Deal, LLC

21.     108 Deal, LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on

6

or around May 28, 2019.   Defendant was listed as the registered agent.

22.   108 Deal, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 108 Deal, LLC.

23.   At all relevant times, 108 Deal, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

24.   On May 27, 2025, 108 Deal, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.   EIDL to 108 Deal, LLC

25.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 108 Deal, LLC.   Defendant was listed in the application as the primary contact for 108 Deal, LLC.

26.   On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 108 Deal, LLC, in which the SBA agreed to make an EIDL to 108 Deal, LLC in the amount of $33,000.00.

27.   Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of 108 Deal, LLC in connection with the EIDL.

28.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 108 Deal, LLC.   Defendant's certification

7

that all representations in the loan application were "true, correct, and complete" was false.

29.     The application states that 108 Deal, LLC had gross receipts/sales of $68,000.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $0.00 for 2019.

30.     The application also lists rental property losses of $68,000.00 for 108 Deal, LLC, the same amount as the inflated gross receipts amount.

31.     The SBA relied on Defendant's false certification in making the EIDL.

32.     The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue of 108 Deal, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

33.     On or around July 16, 2020, the SBA disbursed $32,900.00 for the EIDL of 108 Deal, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

34.     Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 108 Deal, LLC that 108 Deal, LLC would use all proceeds of the EIDL solely as working capital of 108 Deal, LLC.

35.     Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the

EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## II.    112 Deal, LLC

### A.    Structure and Ownership of 112 Deal, LLC

36.    112 Deal, LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around May 28, 2019.   Defendant was listed as the registered agent.

37.    112 Deal, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 112 Deal, LLC.

38.    At all relevant times, 112 Deal, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

39.    On May 27, 2025, 112 Deal, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.    EIDL to 112 Deal, LLC

40.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 112 Deal, LLC.   Defendant was listed in the application as the primary contact for 112 Deal, LLC.

41.    On or around July 16, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 112 Deal, LLC, in which the

9

SBA agreed to make an EIDL to 112 Deal, LLC in the amount of $33,000.00.

42. Also on July 16, 2020, Defendant executed a promissory note and a security agreement on behalf of 112 Deal, LLC in connection with the EIDL.

43. In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 112 Deal, LLC. Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

44. The application states that 112 Deal, LLC had gross receipts/sales of $68,000 and costs of goods sold of $0.00. This representation was false. Tax documents for this entity show gross revenue of $0.00 for 2019.

45. The application also lists rental property losses of $68,000.00 for 112 Deal, LLC, the same amount as the inflated gross receipts amount.

46. The SBA relied on Defendant's false certification in making the EIDL.

47. The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount. Based on the actual gross revenue of 112 Deal, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

48. On or around July 16, 2020, the SBA disbursed $32,900.00 for the EIDL of 112 Deal, LLC into a bank account at BB&T Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the

10

cost of lien filing fees and a third-party UCC handling charge.

49.     Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 112 Deal, LLC that 112 Deal, LLC would use all proceeds of the EIDL solely as working capital of 112 Deal, LLC.

50.     Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

51.     On or around January 15, 2022, Defendant, or someone on his behalf, applied for an increased EIDL amount for 112 Deal, LLC.   This application was denied based on a review of tax documents for 112 Deal, LLC that were submitted in connection with the new application.

### III.    113 Deal Dr, LLC

#### A.    Structure and Ownership of 113 Deal Dr, LLC

52.     113 Deal Dr, LLC, also known as 113 Deal Drive LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around November 6, 2018.   Defendant was listed as the registered agent.

53.     113 Deal Dr, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 113 Deal Dr,

11

LLC.

54.    At all relevant times, 113 Deal Dr, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

55.    On May 27, 2025, 113 Deal Dr, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.    EIDL to 113 Deal Dr, LLC

56.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 113 Deal Dr, LLC.   Defendant was listed in the application as the primary contact for 113 Deal Dr, LLC.

57.    On or around July 17, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 113 Deal Dr, LLC, in which the SBA agreed to make an EIDL to 113 Deal Dr, LLC in the amount of $39,500.00.

58.    Also on July 17, 2020, Defendant executed a promissory note and a security agreement on behalf of 113 Deal Dr, LLC in connection with the EIDL.

59.    In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 113 Deal Dr, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

60.    The application states that 113 Deal Dr, LLC had gross receipts/sales of

12

$81,000.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $17,518.00 for 2019.

61.    The application also lists rental property losses of $81,000.00 for 113 Deal Dr, LLC, the same amount as the inflated gross receipts amount.

62.    The SBA relied on Defendant's false certification in making the EIDL.

63.    The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue of 113 Deal Dr, LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $8,759.00.

64.    On or around July 18, 2020, the SBA disbursed $39,400.00 for the EIDL of 113 Deal Dr, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

65.    Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 113 Deal Dr, LLC that 113 Deal Dr, LLC would use all proceeds of the EIDL solely as working capital of 113 Deal Dr, LLC.

66.    Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

13

### IV.    114 Deal Dr, LLC

#### A.    Structure and Ownership of 114 Deal Dr, LLC

67.    114 Deal Dr, LLC, also known as 114 Deal Drive LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around November 1, 2018.   Defendant was listed as the registered agent.

68.    114 Deal Dr, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 114 Deal Dr, LLC.

69.    At all relevant times, 114 Deal Dr, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

70.    On May 27, 2025, 114 Deal Dr, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

#### B.    EIDL to 114 Deal Dr, LLC

71.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 114 Deal Dr, LLC.   Defendant was listed in the application as the primary contact for 114 Deal Dr, LLC.

72.    On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 114 Deal Dr, LLC, in which the SBA agreed to make an EIDL to 114 Deal Dr, LLC in the amount of $39,500.00.

14

73.     Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of 114 Deal Dr, LLC in connection with the EIDL.

74.     In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 114 Deal Dr, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

75.     The application states that 114 Deal Dr, LLC had gross receipts/sales of $81,000 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $0.00 for 2019.

76.     The application also lists rental property losses of $81,000.00 for 114 Deal Dr, LLC, the same amount as the inflated gross receipts amount.

77.     The SBA relied on Defendant's false certification in making the EIDL.

78.     The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue of 114 Deal Dr, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

79.     On or around July 15, 2020, the SBA disbursed $39,400.00 for the EIDL of 114 Deal Dr, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

15

80. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 114 Deal Dr, LLC that 114 Deal Dr, LLC would use all proceeds of the EIDL solely as working capital of 114 Deal Dr, LLC.

81. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## V. 115 Deal Dr LLC

### A. Structure and Ownership of 115 Deal Dr, LLC

82. 115 Deal Dr, LLC, also known as 115 Deal Drive LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around May 17, 2018. Defendant was listed as the registered agent.

83. 115 Deal Dr, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner. Defendant is also a 2% direct owner of 115 Deal Dr, LLC.

84. At all relevant times, 115 Deal Dr, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

85. On May 27, 2025, 115 Deal Dr, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

16

### B.    EIDL to 115 Deal Dr, LLC

86.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 115 Deal Dr, LLC.   Defendant was listed in the application as the primary contact for 115 Deal Dr, LLC.

87.    On or around July 15, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 115 Deal Dr, LLC, in which the SBA agreed to make an EIDL to 115 Deal Dr, LLC in the amount of $39,500.00.

88.    Also on July 15, 2020, Defendant executed a promissory note and a security agreement on behalf of 115 Deal Dr, LLC in connection with the EIDL.

89.    In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 115 Deal Dr, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

90.    The application states that 115 Deal Dr, LLC had gross receipts/sales of $81,000 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $10,303.00 for 2019.

91.    The application also lists rental property losses of $81,000 for 115 Deal Dr, LLC, the same amount as the inflated gross receipts amount.

92.    The SBA relied on Defendant's false certification in making the EIDL.

17

93.     The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue of 115 Deal Dr, LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $5,151.50.

94.     On or around July 15, 2020, the SBA disbursed $39,400 for the EIDL of 115 Deal Dr, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

95.     Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 115 Deal Dr, LLC that 115 Deal Dr, LLC would use all proceeds of the EIDL solely as working capital of 115 Deal Dr, LLC.

96.     Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## VI.     116 Deal Dr, LLC

### A.     Structure and Ownership of 116 Deal Dr, LLC

97.     116 Deal Dr, LLC, also known as 116 Deal Drive LLC, is a North Carolina limited liability company for which Articles of Organization were submitted

18

to the North Carolina Secretary of State on or around November 1, 2018.   Defendant was listed as the registered agent.

98.   116 Deal Dr, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 116 Deal Dr, LLC.

99.   At all relevant times, 116 Deal Dr, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

100.   On May 27, 2025, 116 Deal Dr, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.   EIDL to 116 Deal Dr, LLC

101.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 116 Deal Dr, LLC.   Defendant was listed in the application as the primary contact for 116 Deal Dr, LLC.

102.   On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 116 Deal Dr, LLC, in which the SBA agreed to make an EIDL to 116 Deal Dr, LLC in the amount of $39,500.00.

103.   Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of 116 Deal Dr, LLC in connection with the EIDL.

104.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are

19

offered to induce SBA to make" the EIDL to 116 Deal Dr, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

105.   The application states that 116 Deal Dr, LLC had gross receipts/sales of $81,000 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $0.00 for 2019.

106.   The application also lists rental property losses of $81,000.00 for 116 Deal Dr, LLC, the same amount as the inflated gross receipts amount.

107.   The SBA relied on Defendant's false certification in making the EIDL.

108.   The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue of 116 Deal Dr, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

109.   On or around July 15, 2020, the SBA disbursed $39,400 for the EIDL of 116 Deal Dr, LLC into a bank account at Wells Fargo Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

110.   Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 116 Deal Dr, LLC that 116 Deal Dr, LLC would use all proceeds of the EIDL solely as working capital of 116 Deal Dr, LLC.

111.   Upon receipt of the EIDL proceeds into a bank account at Wells Fargo

20

Bank in the name of J.A.K. Professionals Inc., Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

### VII.   117 Deal Dr, LLC

#### A.   Structure and Ownership of 117 Deal Dr, LLC

112.   117 Deal Dr, LLC, also known as 117 Deal Drive LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around November 6, 2018.   Defendant was listed as the registered agent.

113.   117 Deal Dr, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 117 Deal Dr, LLC.

114.   At all relevant times, 117 Deal Dr, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

115.   On May 27, 2025, 117 Deal Dr, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

#### B.   EIDL to 117 Deal Dr, LLC

116.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 117 Deal Dr, LLC.   Defendant was listed in the application as the primary

21

contact for 117 Deal Dr, LLC.

117. On or around July 15, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 117 Deal Dr, LLC, in which the SBA agreed to make an EIDL to 117 Deal Dr, LLC in the amount of $39,500.00.

118. Also on July 15, 2020, Defendant executed a promissory note and a security agreement on behalf of 117 Deal Dr, LLC in connection with the EIDL.

119. On or around July 16, 2020, the SBA disbursed $39,400 for the EIDL of 117 Deal Dr, LLC into a bank account at BB&T Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

120. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 117 Deal Dr, LLC that 117 Deal Dr, LLC would use all proceeds of the EIDL solely as working capital of 117 Deal Dr, LLC.

121. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## VIII. 117 Ocean, LLC

### A. Structure and Ownership of 117 Ocean, LLC

122. 117 Ocean, LLC, also known as 117 Ocean LLC, is a North Carolina

22

limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around May 24, 2017.   Defendant was listed as the registered agent.

123.   117 Ocean, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 117 Ocean LLC.

124.   At all relevant times, 117 Ocean, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

125.   On May 27, 2025, 117 Ocean, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.   EIDL to 117 Ocean, LLC

126.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 117 Ocean, LLC.   Defendant was listed in the application as the primary contact for 117 Ocean, LLC.

127.   On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 117 Ocean, LLC, in which the SBA agreed to make an EIDL to 117 Ocean, LLC in the amount of $90,000.00.

128.   Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of 117 Ocean, LLC in connection with the EIDL.

129.   In the Loan Authorization and Agreement, Defendant certified that all

23

representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 117 Ocean, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

130.   The application states that 117 Ocean, LLC had gross receipts/sales of $182,000.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $168,322.00 for 2019.

131.   The application also lists rental property losses of $182,000 for 117 Ocean, LLC, the same amount as the inflated gross receipts amount.

132.   The SBA relied on Defendant's false certification in making the EIDL.

133.   The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue 117 Ocean, LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $84,161.00.

134.   On or around July 16, 2020, the SBA disbursed $89,900 for the EIDL of 117 Ocean, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

135.   Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 117 Ocean, LLC that 117 Ocean, LLC would use all proceeds of the EIDL solely as working capital of 117 Ocean, LLC.

136.    Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

### IX.    119 Ocean, LLC

#### A.    Structure and Ownership of 119 Ocean, LLC

137.    119 Ocean, LLC, also known as 119 Ocean LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around December 19, 2017.   Defendant was listed as the registered agent.

138.    119 Ocean, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 119 Ocean LLC.

139.    At all relevant times, 119 Ocean, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

140.    On May 27, 2025, 119 Ocean, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

#### B.    EIDL to 119 Ocean, LLC

141.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an

EIDL for 119 Ocean, LLC.   Defendant was listed in the application as the primary contact for 119 Ocean, LLC.

142.   On or around July 16, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 119 Ocean, LLC, in which the SBA agreed to make an EIDL to 119 Ocean, LLC in the amount of $90,000.00.

143.   Also on July 16, 2020, Defendant executed a promissory note and a security agreement on behalf of 119 Ocean, LLC in connection with the EIDL.

144.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 119 Ocean, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

145.   The application states that 119 Ocean, LLC had gross receipts/sales of $182,000 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $172,098.00 for 2019.

146.   The application also lists rental property losses of $182,000.00 for 119 Ocean, LLC, the same amount as the inflated gross receipts amount.

147.   The SBA relied on Defendant's false certification in making the EIDL.

148.   The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue 119 Ocean, LLC,

as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $86,549.00.

149.   On or around July 16, 2020, the SBA disbursed $89,900.00 for the EIDL of 119 Ocean, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

150.   Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 119 Ocean, LLC that 119 Ocean, LLC would use all proceeds of the EIDL solely as working capital of 119 Ocean, LLC.

151.   Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## X.   407 Sunset, LLC

### A.   Structure and Ownership of 407 Sunset, LLC

152.   407 Sunset, LLC, also known as 407 Sunset LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around February 6, 2018.   Defendant was listed as the registered agent.

153.   407 Sunset, LLC is 98% owned by Stellar Beach Rentals LLC, of which

27

Defendant is the 100% owner.   Defendant is also a 2% direct owner of 407 Sunset, LLC.

154.   At all relevant times, 407 Sunset, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

2.   On May 27, 2025, 407 Sunset, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B.   EIDL to 407 Sunset, LLC

155.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 407 Sunset, LLC.   Defendant was listed in the application as the primary contact for 407 Sunset, LLC.

156.   On or around July 17, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 407 Sunset, LLC, in which the SBA agreed to make an EIDL to 407 Sunset, LLC in the amount of $34,500.00.

157.   Also on July 17, 2020, Defendant executed a promissory note and a security agreement on behalf of 407 Sunset, LLC in connection with the EIDL.

158.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 407 Sunset, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

28

159. The application states that 407 Sunset, LLC had gross receipts/sales of $71,000.00 and costs of goods sold of $0.00. This representation was false. Tax documents for this entity show gross revenue of $0.00 for 2019.

160. The application also lists rental property losses of $71,000.00 for 407 Sunset, LLC, the same amount as the inflated gross receipts amount.

161. The SBA relied on Defendant's false certification in making the EIDL.

162. The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount. Based on the actual gross revenue of 407 Sunset, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

163. On or around July 17, 2020, the SBA disbursed $34,400.00 for the EIDL of 407 Sunset, LLC into a bank account at BB&T Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

164. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 407 Sunset, LLC that 407 Sunset, LLC would use all proceeds of the EIDL solely as working capital of 407 Sunset, LLC.

165. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes

29

other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

### XI.    611 Marathon Canal LLC

#### A.    Structure and Ownership of 611 Marathon Canal LLC

166.    611 Marathon Canal LLC is a Florida limited liability company for which Electronic Articles of Organization were submitted to the Florida Secretary of State on or around March 8, 2018.

167.    611 Marathon Canal LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.   Defendant is also a 2% direct owner of 611 Marathon Canal LLC.

168.    At all relevant times, 611 Marathon Canal LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

169.    On or around September 26, 2025, 611 Marathon Canal LLC was administratively dissolved.

#### B.    EIDL to 611 Marathon Canal LLC

170.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 611 Marathon Canal LLC.   Defendant was listed in the application as the primary contact for 611 Marathon Canal LLC.

30

171. On or around July 15, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 611 Marathon Canal LLC, in which the SBA agreed to make an EIDL to 611 Marathon Canal LLC in the amount of $150,000.00.

172. Also on July 15, 2020, Defendant executed a promissory note and a security agreement on behalf of 611 Marathon Canal LLC in connection with the EIDL.

173. In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 611 Marathon Canal LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

174. The application states that 611 Marathon Canal LLC had gross receipts/sales of $336,222.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $166,345.00 for 2019.

175. The application also lists rental property losses of $336,222.00 for 611 Marathon Canal LLC, the same amount as the inflated gross receipts amount.

176. The SBA relied on Defendant's false certification in making the EIDL.

177. The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue 611 Marathon

31

Canal LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $83,172.50.

178.    On or around July 15, 2020, the SBA disbursed $149,900.00 for the EIDL of 611 Marathon Canal LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

179.    Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 611 Marathon Canal LLC that 611 Marathon Canal LLC would use all proceeds of the EIDL solely as working capital of 611 Marathon Canal LLC.

180.    Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

181.    On or around May 13, 2021, Defendant, or someone on his behalf, applied for an increased EIDL amount for 611 Marathon Canal LLC.   This application was denied based on a review of tax documents for 611 Marathon Canal LLC that were submitted in connection with the new application.

## XII.    88 Tingler Lane, LLC

### A.    Structure and Ownership of 88 Tingler Lane, LLC

182.    88 Tingler Lane, LLC is a Florida limited liability company for which

Electronic Articles of Organization were submitted to the Florida Secretary of State on or around July 20, 2018.

183.   88 Tingler Lane, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner. Defendant is also a 2% direct owner of 88 Tingler Lane, LLC.

184.   At all relevant times, 88 Tingler Lane, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

185.   On or around September 26, 2025, 88 Tingler Lane, LLC was administratively dissolved.

### B.   EIDL to 88 Tingler Lane, LLC

186.   On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 88 Tingler Lane, LLC.  Defendant was listed in the application as the primary contact for 88 Tingler Lane, LLC.

187.   On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 88 Tingler Lane, LLC, in which the SBA agreed to make an EIDL to 88 Tingler Lane, LLC in the amount of $43,200.00.

188.   Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of 88 Tingler Lane, LLC in connection with the EIDL.

189.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 88 Tingler Lane, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

190.   The application states that 88 Tingler Lane, LLC had gross receipts/sales of $88,333.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $0.00 for 2019.

191.   The application also lists rental property losses of $88,333.00 for 88 Tingler Lane, LLC, the same amount as the inflated gross receipts amount.

192.   The SBA relied on Defendant's false certification in making the EIDL.

193.   The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue 88 Tingler Lane, LLC, as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

194.   On or around July 15, 2020, the SBA disbursed $43,100.00 for the EIDL of 88 Tingler Lane, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

195.   Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 88 Tingler Lane, LLC that 88 Tingler Lane, LLC would use all

34

proceeds of the EIDL solely as working capital of 88 Tingler Lane, LLC.

196. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Stellar Beach Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## XIII. FLA Galeon LLC

### A. Structure and Ownership of FLA Galeon LLC

197. FLA Galeon LLC, also known as FLA Galeon, is a Florida limited liability company for which Electronic Articles of Organization were submitted to the Florida Secretary of State on or around April 11, 2019.

198. FLA Galeon LLC is at least partially owned by Defendant.

199. At all relevant times, FLA Galeon LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

200. On or around September 26, 2025, FLA Galeon LLC was administratively dissolved.

### B. EIDL to FLA Galeon LLC

201. On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for FLA Galeon LLC. Defendant was listed in the application as the primary contact for FLA Galeon LLC.

35

202.   On or around July 28, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of FLA Galeon LLC, in which the SBA agreed to make an EIDL to FLA Galeon LLC in the amount of $150,000.00.

203.   Also on July 28, 2020, Defendant executed a promissory note and a security agreement on behalf of FLA Galeon LLC in connection with the EIDL.

204.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to FLA Galeon LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

205.   The application states that FLA Galeon LLC had gross receipts/sales of $320,332.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $97,323.00 for 2019.

206.   The application also lists rental property losses of $320,332.00 for FLA Galeon LLC, the same amount as the inflated gross receipts amount.

207.   The SBA relied on Defendant's false certification in making the EIDL.

208.   The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.   Based on the actual gross revenue FLA Galeon LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $48,661.50.

209. On or around July 28, 2020, the SBA disbursed $149,900.00 for the EIDL of FLA Galeon LLC into a bank account at BB&T Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

210. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of FLA Galeon LLC that FLA Galeon LLC would use all proceeds of the EIDL solely as working capital of FLA Galeon LLC.

211. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of FLA Galeon LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## XIV. J.A.K. Professionals Inc.

### A. Structure and Ownership of J.A.K. Professionals Inc.

212. J.A.K. Professionals Inc., also known as J.A.K. Professionals INC, is a North Carolina corporation for which Articles of Incorporation were submitted to the North Carolina Secretary of State on or around December 14, 2007.

213. Defendant is a 100% direct owner of J.A.K. Professionals Inc.

214. At all relevant times, J.A.K. Professionals Inc. was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

215. On November 12, 2024, J.A.K. Professionals Inc. was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B. EIDL to J.A.K. Professionals Inc.

216. On or around August 6, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for J.A.K. Professionals Inc. Defendant was listed in the application as the primary contact for J.A.K. Professionals Inc.

217. On or around August 28, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of J.A.K. Professionals Inc., in which the SBA agreed to make an EIDL to FLA Galeon LLC in the amount of $150,000.00.

218. Also on August 28, 2020, Defendant executed a promissory note and a security agreement on behalf of J.A.K. Professionals Inc. in connection with the EIDL.

219. In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to J.A.K. Professionals Inc. Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

220. The application states that J.A.K. Professionals Inc. had gross receipts/sales of $391,320.00 and costs of goods sold of $0.00. This representation was false. Tax documents for this entity show gross revenue of $0.00 for 2019.

221. The application also lists rental property losses of $391,320.00 for J.A.K. Professionals Inc., the same amount as the inflated gross receipts amount.

222. The SBA relied on Defendant's false certification in making the EIDL.

223. The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.    Based on the actual gross revenue J.A.K. Professionals Inc., as reflected in 2019 tax documents, this entity would not have been eligible for an EIDL.

224. On or around August 28, 2020, the SBA disbursed $149,900.00 for the EIDL of J.A.K. Professionals Inc. into a bank account at Wells Fargo Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

225. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of J.A.K. Professionals Inc. that J.A.K. Professionals Inc. would use all proceeds of the EIDL solely as working capital of J.A.K. Professionals Inc.

226. Upon receipt of the EIDL proceeds into a bank account at Wells Fargo Bank, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including transfers to a personal bank account, payment of personal tax liability, repayment of unrelated loans, and the expenses of other entities owned by Defendant.

39

### XV.    Fun in the Sun Rentals LLC

#### A.    Structure and Ownership of Fun in the Sun Rentals LLC

227.    Fun in the Sun Rentals, LLC, is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around February 23, 2015.    Defendant was listed as the registered agent.

228.    Fun in the Sun Rentals, LLC is 98% owned by Stellar Beach Rentals LLC, of which Defendant is the 100% owner.    Defendant is also a 2% direct owner of Fun in the Sun Rentals, LLC.

229.    At all relevant times, Fun in the Sun Rentals, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

230.    On May 27, 2025, Fun in the Sun Rentals, LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

#### B.    EIDL to Fun in the Sun Rentals LLC

231.    On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for Fun in the Sun Rentals LLC.    Defendant was listed in the application as the primary contact for Fun in the Sun Rentals LLC.

232.    On or around July 14, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of Fun in the Sun Rentals LLC, in

which the SBA agreed to make an EIDL to Fun in the Sun Rentals LLC in the amount of $126,000.00.

233.    Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of Fun in the Sun Rentals LLC in connection with the EIDL.

234.    In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to Fun in the Sun Rentals LLC. Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

235.    The application states that Fun in the Sun Rentals LLC had gross receipts/sales of $254,000.00 and costs of goods sold of $0.00.    This representation was false.    Tax documents for this entity show gross revenue of $202,873.00 for 2019.

236.    The application also lists rental property losses of $254,000.00 for Fun in the Sun Rentals LLC, the same amount as the inflated gross receipts amount.

237.    The SBA relied on Defendant's false certification in making the EIDL.

238.    The EIDL amount was approximately 50% of the false gross receipts / rental property losses amount.    Based on the actual gross revenue Fun in the Sun Rentals LLC, as reflected in 2019 tax documents, this entity would have only been eligible for an EIDL of $101,436.50.

41

239.   On or around July 16, 2020, the SBA disbursed $125,900.00 for the EIDL of Fun in the Sun Rentals LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

240.   Defendant agreed in the Loan Authorization and Agreement as the owner/officer of Fun in the Sun Rentals LLC that Fun in the Sun Rentals LLC would use all proceeds of the EIDL solely as working capital of Fun in the Sun Rentals LLC.

241.   Upon receipt of the EIDL proceeds into a bank account at BB&T Bank in the name of Fun in the Sun Rentals LLC, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

## XVI.   1 Sandpiper, LLC

### A.   Structure and Ownership of 1 Sandpiper, LLC

242.   1 Sandpiper, LLC is a Florida limited liability company for which Electronic Articles of Organization were submitted to the Florida Secretary of State on or around December 17, 2015.

243.   At all relevant times, Defendant was at least a partial owner of 1 Sandpiper, LLC.

244.   At all relevant times, 1 Sandpiper, LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

42

245. On May 15, 2025, 1 Sandpiper, LLC filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina.

### B.      EIDL to 1 Sandpiper, LLC

246. On or around March 31, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for 1 Sandpiper, LLC.   Defendant was listed in the application as the primary contact for 1 Sandpiper, LLC.

247. On or around June 10, 2020, Defendant electronically signed a Loan Authorization and Agreement as the owner/officer of 1 Sandpiper, LLC, in which the SBA agreed to make an EIDL to 1 Sandpiper, LLC in the amount of $150,000.00.

248. Also on June 10, 2020, Defendant executed a promissory note and a security agreement on behalf of 1 Sandpiper, LLC in connection with the EIDL.

249. In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to 1 Sandpiper, LLC.   Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

250. The application states that 1 Sandpiper, LLC had gross receipts/sales of $612,921.00 and costs of goods sold of $0.00.   This representation was false.   Tax documents for this entity show gross revenue of $523,221.00 for 2019.

251. The application also lists rental property losses of $612,921.00 for 1 Sandpiper, LLC, the same amount as the inflated gross receipts amount.

252. The SBA relied on Defendant's false certification in making the EIDL.

253. On or around June 10, 2020, the SBA disbursed $149,900.00 for the EIDL of 1 Sandpiper, LLC into a bank account at BB&T Bank.   Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

254. Defendant agreed in the Loan Authorization and Agreement as the owner/officer of 1 Sandpiper, LLC that 1 Sandpiper, LLC would use all proceeds of the EIDL solely as working capital of 1 Sandpiper, LLC.

255. Upon receipt of the EIDL proceeds into a bank account at BB&T Bank, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

256. On or around March 22, 2022, Defendant, or someone on his behalf, applied for an increased EIDL amount for 1 Sandpiper, LLC.   This application was denied.

## XVII. Stellar Beach Realty & Rentals LLC

### A. Structure and Ownership of Stellar Beach Realty & Rentals LLC

257. Stellar Beach Realty & Rentals LLC is a North Carolina limited liability company for which Articles of Organization were submitted to the North Carolina Secretary of State on or around August 19, 2016. Defendant was listed as the registered agent.

258. Stellar Beach Realty & Rentals LLC is 95% owned by Defendant and 5% owned by Defendant's wife.

259. At all relevant times, Stellar Beach Realty & Rentals LLC was an "insider" of Defendant within the meaning of sections 101(31) and 523(a)(2)(B) of the Bankruptcy Code.

260. On November 21, 2025, Stellar Beach Realty & Rentals LLC was administratively dissolved by the North Carolina Secretary of State for failure to file annual reports.

### B. EIDL to Stellar Beach Realty & Rentals LLC

261. On or around April 1, 2020, Defendant or someone on his behalf submitted an electronic Rapid Finance Intake Application to the SBA to apply for an EIDL for Stellar Beach Realty & Rentals LLC. Defendant was listed in the application as the primary contact for Stellar Beach Realty & Rentals LLC.

262. On or around July 14, 2020, Defendant electronically signed a Loan

45

Authorization and Agreement as the owner/officer of Stellar Beach Realty & Rentals LLC, in which the SBA agreed to make an EIDL to Stellar Beach Realty & Rentals LLC in the amount of $150,000.00.

263.   Also on July 14, 2020, Defendant executed a promissory note and a security agreement on behalf of Stellar Beach Realty & Rentals LLC in connection with the EIDL.

264.   In the Loan Authorization and Agreement, Defendant certified that all representations in the loan application "are true, correct, and complete and are offered to induce SBA to make" the EIDL to Stellar Beach Realty & Rentals LLC. Defendant's certification that all representations in the loan application were "true, correct, and complete" was false.

265.   The application lists gross receipts/sales amounts and lost rent amounts for Stellar Beach Realty & Rentals LLC that are duplicative of the gross receipts/sales amounts and lost rent amounts of other entities.

266.   The SBA relied on Defendant's false certification in making the EIDL to Stellar Beach Realty & Rentals LLC.

267.   On or around July 16, 2020, the SBA disbursed $149,900.00 for the EIDL of Stellar Beach Realty & Rentals LLC into a bank account at BB&T Bank. Pursuant to the Loan Authorization and Agreement, $100.00 was deducted from the proceeds to pay the cost of lien filing fees and a third-party UCC handling charge.

46

268.    Defendant agreed in the Loan Authorization and Agreement as the owner/officer of Stellar Beach Realty & Rentals LLC that Stellar Beach Realty & Rentals LLC would use all proceeds of the EIDL solely as working capital of Stellar Beach Realty & Rentals LLC.

269.    Upon receipt of the EIDL proceeds into a bank account at BB&T Bank, Defendant immediately commingled the EIDL proceeds with the funds of other entities and used the proceeds for purposes other than as required in the Loan Authorization and Agreement including the expenses of other entities owned by Defendant.

### XVIII.    Additional Declined EIDL Applications

270.    In addition to the above applications, Defendant applied for EIDLs for the following entities: 157 Brunswick LLC, 217 Brunswick LLC, 1940 Holden LLC, 157 OIB LLC, and Stellar Beach Rentals LLC.   These applications each contained false or inflated revenue numbers and were all denied.

### XIX.   PPP Loans to 119 Ocean LLC and 1 Sandpiper, LLC

271.    In addition to the EIDLs, Defendant obtained PPP loans from Truist Bank for entities that were not eligible to receive them.   Defendant submitted PPP loan forgiveness applications to Truist Bank and/or the SBA that contained false information regarding payroll amounts and the number of employees for the borrower entities.    These loans were forgiven based on false information provided by Defendant.   The SBA remitted payment to Truist Bank for the forgiven amounts.

47

272.    119 Ocean LLC received forgiveness of $15,072.00 in PPP loan principal and interest based on false information submitted by Defendant.   Defendant falsely stated that 119 Ocean LLC had one employee between May 21, 2020 and November 11, 2020 and that $15,072.00 had been spent on payroll costs during this period. This statement was false.   119 Ocean LLC had no employees during this period.

273.    1 Sandpiper, LLC received forgiveness of $98,400.00 in PPP loan principal and interest based on false information submitted by Defendant. Defendant falsely stated that 1 Sandpiper, LLC had two employees and that $98,400.00 had been spent on payroll costs during this period.   This statement was false.   1 Sandpiper LLC had no employees during this period.

## COUNT I
### Exception from Discharge of Debt
### Pursuant to 11 U.S.C. § 523(a)(2)(A)

274.    The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

275.    Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is excepted from discharge if it is for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

276.    Defendant obtained the EIDLs and PPP loans from the SBA by false pretenses, false representations, or actual fraud, upon which the SBA reasonably and justifiably relied.

48

277.   As a result of Defendant's use of false pretenses, false representations, or actual fraud, the SBA has been damaged.

278.   Defendant is personally liable to the SBA under the FCA, 15 U.S.C. § 636(b), 15 U.S.C. § 645, and other applicable laws.

279.   The debt owed to the SBA is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II
### Exception from Discharge of Debt
### Pursuant to 11 U.S.C. § 523(a)(2)(B)

280.   The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

281.   Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt is excepted from discharge if it is for money, property, services, or an extension, renewal, or refinancing of credit obtained by false use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and that the debtor caused to be made or published with intent to deceive; or

282.   Defendant obtained the EIDLs and PPP loans from the SBA by use of statements in writing that were materially false respecting the financial condition of Defendant or insiders of Defendant, that Defendant caused to be submitted to the SBA in applying for the EIDLs and to Truist Bank in applying for the PPP loans and PPP loan forgiveness, and upon which the SBA reasonably relied.

49

283.   As a result of Defendant's use of false statements in writing, the SBA has been damaged.

284.   Defendant is personally liable to the SBA under 15 U.S.C. § 636(b), 15 U.S.C. § 645, the FCA and other applicable laws.

285.   The debt owed to the SBA is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## COUNT III
## Exception from Discharge of Debt
## Pursuant to 11 U.S.C. § 523(a)(7)

286.   The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

287.   Pursuant to 11 U.S.C. § 523(a)(7), a debt is excepted from discharge "to the extent such debt is a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ."

288.   Each of the EIDL agreements signed by Defendant provides:

Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b).

289.   Defendant violated 15 U.S.C. § 636(b) by wrongfully misapplying the proceeds of the EIDL as detailed above.

290.    15 U.S.C. § 636(b) imposes a penalty of one-and-one-half times the original principal amount of the loan, which is owed to SBA.  This penalty is not "compensation for actual pecuniary loss."

291.    Accordingly, the portion of the debt owed to the SBA by Defendant based on his violation of 15 U.S.C. § 636(b) is nondischargeable pursuant to 11 U.S.C. § 523(a)(7) as a penalty payable to and for the benefit of a governmental unit and not as compensation for actual pecuniary loss.

292.    Additionally, treble damages and any civil penalty awarded under the FCA are nondischargeable pursuant to 11 U.S.C. § 523(a)(7) as a penalty payable to and for the benefit of a governmental unit and not as compensation for actual pecuniary loss.

## COUNT IV
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

293.    The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

294.    Defendant knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

295.    Defendant knowingly requested and obtained the above-described EIDLs for entities he owned for amounts to which those entities were not entitled. Defendant knowingly requested and obtained the above-described PPP loans and

PPP loan forgiveness for entities he owned that were not entitled to such loans.

296. By virtue of these false claims, the United States was damaged for the ineligible EIDL amounts, the full PPP loan amounts and lender fees, plus costs and interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

**COUNT V**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Making or Using False Records or Statements**

297. The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

298. Defendant knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, and/or to get the United States to pay or approve false or fraudulent claims, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(B).

299. Defendant knowingly submitted false records or statements to the SBA and Truist Bank to be provided to the SBA, including the above-described EIDL agreements in which he falsely certified to the validity of false information in EIDL applications and the above-described PPP loan and forgiveness applications in which he submitted false information.

300. By virtue of these false statements, the United States was damaged for the ineligible amounts, plus costs and interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT VI
## Penalty under 15 U.S.C. § 636(b)

301. The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

302. Each of the EIDL agreements signed by Defendant provides:

Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b).

303. Defendant violated 15 U.S.C. § 636(b) by wrongfully misapplying the proceeds of the EIDL as detailed above.

304. 15 U.S.C. § 636(b) imposes a penalty of one-and-one-half times the original principal amount of the loan, which is owed to SBA. This penalty is not "compensation for actual pecuniary loss."

305. Accordingly, Defendant is civilly liable for a penalty equal to one-and-one-half times the original principal of each EIDL.

## COUNT VII
## Unjust Enrichment

306. The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

307. The United States is entitled to recovery of monies by which Defendant has been unjustly enriched.   By obtaining EIDL proceeds and PPP loan proceeds to which entities he owned were not entitled and by misusing EIDL proceeds, Defendant

53

was unjustly enriched and the United States is entitled to damages in the ineligible amounts and any eligible but misused amounts, plus costs and interest, together with any damages to be determined at trial.

## COUNT VIII
### Payment by Mistake

308.    The United States realleges and incorporates by reference all above paragraphs as though fully set forth herein.

309.    The United States is entitled to recovery of monies the United States paid directly or indirectly to Defendant or his entities because of mistaken understanding of fact.

310.    The United States' mistaken understandings of fact were material to its decisions to approve EIDLs and PPP loans and PPP loan forgiveness to entities owned by Defendant.

311.    The United States, acting in reasonable reliance on the truthfulness of the statements contained in the EIDL applications and the PPP loan and forgiveness applications, approved the loans or loan forgiveness to Defendant's entities beyond the amounts to which they were entitled.

312.    Thus, the United States is entitled to recoup the ineligible amount of the EIDLs, plus the full amount of the PPP loans, plus any other amounts to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court enter judgment against Defendant as follows:

1.     On Counts I, II, and III, determining that Defendant's debt to the United States is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A); 523(a)(2)(B); and 523(a)(7);

2.     On Counts IV and V (False Claims Act), awarding the United States treble damages it sustained for the approximately $939,809.00 in excess EIDL proceeds, $113,472 in PPP proceeds, plus PPP lender fees, plus interest and costs, plus the maximum civil penalties allowed by law;

3.     On Count VI (Penalty under 15 U.S.C. § 636(b)), awarding the United States penalty in the approximate amount of $2,320,800.00, which is one-and-one-half times the original $1,547,200.00 principal of the EIDLs;

4.     On Count VII (Unjust Enrichment), awarding the United States the amount by which Defendant was unjustly enriched;

5.     On Count VIII (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendant;

6.     Awarding the United States pre- and post-judgment interest, costs, and filing fees; and

7.     Granting such other relief as the Court deems just and proper.

Respectfully submitted this 1st day of June, 2026.

W. ELLIS BOYLE
United States Attorney


By:    */s/ Benjamin J. Higgins*
BENJAMIN J. HIGGINS
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4043
Email: benjamin.higgins2@usdoj.gov
Massachusetts Bar # 690969